# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TAVON JAMAAL PARTLOW, SR.,

  Plaintiff,

v.                                                         Civil Action No.: CCB-19-1152

MARYLAND PAROLE AND PROBATION,
STATE ATTORNEY GENERAL,

  Defendants.

## MEMORANDUM

Plaintiff Tavon Partlow, Sr., filed this civil rights complaint alleging that he was denied a timely parole revocation hearing, resulting in his imprisonment for seven months. His complaint also alleges that he endured poor conditions of confinement during that time. ECF 1. Defendants filed a motion to dismiss or for summary judgment in response to the complaint. ECF 13. Partlow opposed the motion. ECF 16. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, defendants' motion, construed as a motion for summary judgment, will be granted.

## Background

Partlow alleges he was entitled to a revocation hearing within 60 days of being taken into custody on a retake warrant issued by the Parole Commission, as mandated by Code of Maryland Administrative Regulation ("COMAR") 12.08.01(F)(2). ECF 1 at 4. Partlow states that the pending charge against him was a misdemeanor and was charged by summons as opposed to a warrant. *Id.* He alleges that the failure to provide a hearing was a violation of his due process rights that resulted in his loss of liberty and "deprivation of familial association." *Id.* at 6.

Partlow states that he has medical issues that were not accommodated while he was incarcerated at Patuxent Institution pending his revocation hearing. ECF 1 at 6. He explains that he had heart surgery in mid-July of 2018 for a condition that "started when [he] was a child." *Id.* at 5. He was wheelchair bound "for a few years" following surgery to correct an issue with his hips that occurred when both femurs separated from his hip joints. *Id.* Although he regained the ability to walk, he is dependent on a cane due to bilateral hip arthritis. *Id.* at 5–6. Partlow was not permitted to keep his cane with him when he was taken into custody on the retake warrant. *Id.* at 6. Partlow also suffers from post-traumatic stress disorder (PTSD), a result of witnessing numerous homicides during his childhood, and suffers from depression. *Id.* at 6. He states he explained all of his conditions to both medical and correctional staff,[1] but was kept on a third floor tier despite his limitations. *Id.*

In addition to being denied the use of his cane, Partlow states he was not allowed to bring or have access to his "sleep machine to help with [his] breathing." ECF 1 at 6. He states he could not sleep due to his depression and his anxiety regarding bills that were no longer being paid. *Id.* He also explains that his planned "gastric sleeve surgery" was put on hold due to his incarceration, which in turn delayed a plan for total hip replacement surgery. *Id.* He claims that any time a weapon was found in a common area of the housing unit, the entire unit would be locked down for 30 days; his unit was locked down three consecutive times. *Id.* at 7. The lock down status made it difficult for Partlow to exercise, causing additional joint pain, and made it difficult for him to contact his family. *Id.*

According to Partlow, he was subjected to "constant harassment" from the correctional officers. ECF 1 at 7. He alleges that on October 22, 2018, Officer Fon "verbally assaulted" him

---

[1] Partlow does not specify what he said or to whom he said it.

when he told Partlow he wasn't a "real Muslim," adding that "we need to take more showers." *Id*. Partlow includes with his complaint copies of administrative remedy procedure ("ARP") complaints regarding the incident, to which he asserts he never got a real response. *Id*.; *see also* ECF 1-1 at 1–3 (ARP and response regarding Oct. 22, 2018, incident), 8–10 (ARP regarding Nov. 25, 2018, incident of officer harassment, no response).

On December 8, 2018, Partlow fainted due to "extremely high blood pressure." ECF 1 at 7. Other inmates in the housing unit kicked and banged on their cell doors to get the attention of an officer so that Partlow would get the medical attention he needed, but Partlow claims it still took 45 minutes before he was "rescued." *Id*. Although he was taken to Howard County General Hospital for treatment, Partlow states that no attempt was made to determine why he was having fainting spells during the six months he was confined at Patuxent. *Id*. As relief, Partlow seeks compensation for each day he was incarcerated, for lost wages, attorney's fees, and other compensatory damages. ECF 1 at 8.

Defendants explain that Partlow began serving a seven-year term of confinement[2] on October 13, 2009, and was released on mandatory supervision[3] on May 20, 2016. *See* ECF 13-1 at 10; ECF 13-7 at 1 (Mandatory Release Certificate). His mandatory supervision expired on September 22, 2018. ECF 13-2 at 2, ¶ 10.

In December of 2017, a summons was issued for Partlow by the District Court for Harford County, Maryland, charging him with second-degree assault. ECF 13-2 at 1, ¶ 4. No action was taken by the Parole Commission, although Partlow remained under supervision at that time. *Id*.

---

[2] Following his conviction in the Circuit Court for Harford County, Maryland, on charges of possession with intent to distribute a controlled dangerous substance, Partlow was sentenced to twenty years, all but seven years suspended, with five years of probation. ECF 13-3 at 1.
[3] Mandatory supervision is a conditional release from the custody of the Division of Correction after an inmate "has served the term or terms, less diminution credit awarded." Md. Code Ann., Corr. Serv. § 7-501(a)(3).

3

In August of 2018, another summons was issued by the District Court for Harford County, charging Partlow with second-degree assault of his 13-year-old son. ECF 13-2 at 2, ¶ 5. On August 29, 2018, a retake warrant was issued by the Parole Commission charging Partlow with violating the conditions of his release. *Id.* at 2, ¶ 6; *see also* ECF 13-11 (Retake Warrant). Pursuant to that retake warrant Partlow was taken into custody on October 1, 2018. ECF 13-13 (Supervision Summary).

On October 9, 2018, Partlow waived a preliminary parole revocation hearing and admitted he violated the conditions of his release. ECF 13-12 (Waiver of Preliminary Hearing and Admission of Violations). Notwithstanding that admission, the Parole Commission postponed Partlow's revocation hearing and detained him until resolution of the pending assault charges in Harford County. ECF 13-2 at 2, ¶ 10.

Parole Commissioner Jason Keckler explains that the decision to postpone the revocation hearing was based in part on the nature of the criminal charges pending against Partlow and the fact that, if his mandatory supervision release were revoked, his confinement could be extended to January 28, 2021. ECF 13-2 at 2–3, ¶ 10. Despite the fact Partlow was confined on the retake warrant on a date beyond the September 22, 2018, expiration of his supervision, Partlow remained incarcerated. *Id.*

In a letter dated March 4, 2019, counsel for Partlow contacted the Parole Commission requesting a hearing date for his revocation. ECF 13-15. A revocation hearing was held before Commissioner Keckler on April 12, 2019. ECF 13-2 at 3, ¶ 12; ECF 13-17 (transcript of testimony at revocation hearing). Partlow's supervising agent recommended that Partlow be released to probation supervision and noted that he was facing another 13-year sentence if he was convicted on the new assault charge. ECF 13-17 at 2. Keckler explained to Partlow that his parole

supervision would be continued and he would be released from confinement and required to report to his parole agent. *Id.* at 3. After Partlow addressed Keckler, explaining the number of programs he had completed while confined and his compliance with reporting to his parole agent, and noting that he had already been confined for seven months, Keckler changed the disposition of the case and closed out Partlow's parole supervision. *Id.* at 4–5. Partlow was released from custody on the same date of his hearing. ECF 13-2 at 3, ¶ 16.

**Standard of Review**

Summary judgment is governed by Federal Rule of Civil Procedure 56, which provides, in relevant part, that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must,

however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)) (internal quotation marks omitted).

## Analysis

### 1. Due Process Claim

In order to be entitled to the protections of the due process clause, a person must have a constitutionally protected life, liberty, or property interest at stake. The Supreme Court has recognized that a liberty interest exists in the context of parole revocation. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). At a revocation hearing, a parolee is entitled to:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. Although minimum procedural rights were delineated, the Supreme Court recognized that a parole revocation hearing should remain informal to permit receipt of evidence not ordinarily admissible in a criminal trial. *Id.*

The Court also addressed the purpose of providing a preliminary hearing to parolees, which is to determine probable cause for revocation, to provide notice that a revocation hearing will be provided, and to delineate the allegations supporting parole revocation as well as providing the parolee an opportunity to respond to those allegations. *Id.* at 487. The hearing officer then makes "a determination . . . sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." *Id.* The revocation hearing is to be provided

prior to a decision revoking parole and "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488. This hearing, which is similar to a merits trial, "must be tendered within a reasonable time after the parolee is taken into custody." *Id.* Although the *Morrissey* Court set forth the "minimum requirements of due process" in the context of parole revocation, the Court also cautioned that "there is no thought to equate . . . parole revocation to a criminal prosecution in any sense." *Id.* at 489.

Turning now to the undisputed seven-month delay between the time Partlow was returned to custody and the date he received a revocation hearing, the circumstances of the lengthy delay do not support a finding that due process protections were violated. Importantly, Partlow waived his right to a preliminary hearing, admitted that he violated the conditions of his mandatory release supervision, and waived "the right to contest the fact that [he] committed the violations." ECF 13-12. While applicable Maryland regulations require a revocation hearing to be held within 60 days of the date a retake warrant is issued,[4] postponements for good cause that result in a later revocation hearing are permitted by those same regulations. *See* COMAR 12.08.01.22(F)(2)(b) (Parole Commission may postpone revocation hearings for good cause shown).

A delay in the revocation hearing runs afoul of the due process clause only where the delay is both unreasonable and prejudicial. *See Gaddy v. Michael*, 519 F.2d 669, 673 (4th Cir. 1975). Prejudice is demonstrated when the delay prevents the parolee from defending himself, because he was unable to present needed evidence or witnesses in his defense. *Id.* at 678. The postponement in Partlow's case was for the purpose of awaiting the disposition of his pending criminal charge for second-degree assault. For reasons not specified in the record before this court,

---

[4] *See* COMAR 12.08.01.22(F)(2)(a).

7

the revocation hearing ultimately was scheduled prior to the disposition of the pending charge. Where, as here, the parolee admits to the validity of the allegation that he violated parole, there is no demonstrable prejudice. *See McNeal v. United States*, 553 F.2d 66, 68 (10th Cir. 1997) (delay in revocation hearing is not a *per se* violation of due process). Partlow offers no evidence to support a finding that the delay in providing him with a revocation hearing was prejudicial to his ability to defend against the charge that he violated the conditions of his release. ECF 16 (Opposition Response). The claim therefore fails and defendants are entitled to summary judgment in their favor on Partlow's due process claim.

## 2. Conditions Claim

As defendants correctly argue, Partlow has not named a proper defendant in his complaint, nor does he identify any personal involvement by particular individuals in the alleged unconstitutional conditions. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (§ 1983 liability attaches only upon personal participation in the constitutional violation); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liberally construed, however, Partlow describes the conditions under which he was incarcerated as evidence that the delay in his parole revocation hearing was unreasonable and caused him harm. To the extent Partlow intended these claims to be an independent Eighth Amendment claim, the merits of the claim are analyzed below.

A prisoner must prove two elements to establish that particular conduct by prison officials constitutes cruel and unusual punishment: (1) "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and (2) "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (emphasis in original) (citation omitted). "Only extreme deprivations are adequate to satisfy the objective

component of an Eighth Amendment claim regarding conditions of confinement." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Id.* "Although the availability of basic hygiene items may be considered a minimal necessity, the Eighth Amendment is only violated when the deprivation of these items is sufficiently serious or lengthy and the prison officials have acted with deliberate indifference." *Richmond v. Stigile*, 22 F. Supp. 2d 476, 480 (D. Md. 1998). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993). "An accidental or inadvertent response to a known risk is insufficient to create Eighth Amendment liability." *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

While Partlow asserts emotional harm resulting from his seven-month confinement at Patuxent, the harm alleged is akin to that which any person who is incarcerated might experience. An inability to maintain former employment, anxiety regarding unpaid bills, and damage to personal relationships are all hallmarks of the consequences of imprisonment. Further, the examples of officer harassment Partlow provides in his complaint and exhibits depict little more than disagreements regarding enforcement of rules or rude commentary made by a correctional officer to Partlow. Such verbal abuse, to the extent it can be characterized as abuse, does not rise to the level of an Eighth Amendment violation. Verbal abuse of inmates by guards, without more,

9

states no claim of assault. *Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

In addition, Partlow's claim that his medical needs were not properly addressed lacks any specific description of how he was deprived of care for serious medical needs. "Since 'routine discomfort' is part of prison life and 'society does not expect that prisoners will have unqualified access to health care,' in order to demonstrate the objective component of conditions-of-confinement or medical care claims prisoners must demonstrate 'extreme' deprivations or neglect of 'serious' medical needs." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (citing *Hudson*, 503 U.S. at 8–9). Partlow's claim that he was denied the use of a cane, denied use of a "sleep machine," and improperly assigned to a cell on the third floor of a housing unit does not include any allegation that he informed the named defendants, or anyone else, of these issues. Furthermore, he does not indicate that he advised specified individuals of the dangers these conditions imposed on him, but that his assertions were nevertheless met with a callous disregard. *See Farmer*, 511 U.S. at 839–40 (requiring subjective recklessness in failure to treat a serious medical condition). Accordingly, defendants are entitled to summary judgment in their favor on this claim.

## Conclusion

Based on the undisputed facts established in the record before the court, defendants are entitled to summary judgment in their favor on all claims raised. A separate order follows.

12/4/19
Date

Catherine C. Blake
United States District Judge